**Felton JIMMERSON, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 6:99CV258.

United States District Court,
E.D. Texas,
Tyler Division.

Aug. 21, 2000.

Robert C Hardy, Sr, Houston, TX, for Felton Jimmerson.

Steven MacArthur Mason, Asst. U.S. Attorney, U.S. Attorney's Office, Tyler, TX, for Commissioner, SSA.

### MEMORANDUM OPINION AND ORDER

STEGER, District Judge.

Came on this day for consideration the above-entitled and numbered cause of action. After careful consideration of the Plaintiff's *Brief* (Docket No. 12), *Defendant's Brief* (Docket No. 14), the transcript, and the entire record, the Court is of the opinion that the following order should issue.

### I. PROCEDURAL HISTORY

The Plaintiff, Felton Jimmerson (hereinafter "Jimmerson"), brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) for a judicial review of a final decision of the Commissioner of Social Security (hereinafter "Commissioner").

Jimmerson filed an application for supplemental security income payment under title XVI of the Social Security Act (hereinafter "SSA") on April 20, 1992. This application was denied by an Administrative Law Judge (hereinafter "ALJ") on February 25, 1994. After the Appeals Council denied the Plaintiff's request for review, Jimmerson filed a civil action in the United States District Court for the Eastern District of Texas. The Court remanded the case to the Commissioner for further proceedings on September 21, 1995.

A supplemental hearing was held and the Plaintiff's application was again denied by an ALJ on August 22, 1996 (TR. at 281–323, 391–401). Once again, the Plaintiff sought review by the Appeals Council, and the case was summarily remanded (for the second time) on March 14, 1997, for further review (TR. at 406–408).

The Appeals Council, in their remand order, instructed a new ALJ to do the following:

(1) Evaluate the Plaintiff's past work to determine whether it constitutes "past relevant work";

(2) Evaluate the Plaintiff's allegation that he is illiterate; and

(3) Obtain evidence from a vocational expert to assess the effect of the Plaintiff's non-exertional limitations on his occupational base for other work.

(TR. at 407–408). Following the orders of the Appeals Council, a different ALJ, Thomas Bundy, held another hearing on

September 2, 1997.[1] On November 21, 1997, the ALJ issued a decision denying the benefits sought. The ALJ found, *inter alia,* that the Plaintiff was not illiterate, as he possessed a marginal education.

The Appeals Council denied the Plaintiff's request for review of this decision on April 17, 1999 and this action for judicial review ensued. The Plaintiff's appeal is now ripe for discussion.

## II. STANDARD OF REVIEW

In reviewing the decision of the Commissioner, this Court's role is limited to the following issues:

(1) Whether the final decision is supported by substantial evidence; and

(2) Whether proper legal standards were used to evaluate the evidence.[2]

42 U.S.C. § 405(g); *Brown v. Apfel,* 192 F.3d 492 (5th Cir.1999) (quoting *McQueen v. Apfel,* 168 F.3d 152, 157 n. 2 (5th Cir. 1999)); *see also Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir. 1989); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir.1988).

When applying the "substantial evidence" standard, this Court must scrutinize the record to determine if there is, in fact, such evidence present in the record. *Haywood,* 888 F.2d at 1466. Substantial evidence means more than a mere scintilla, but less than a preponderance. "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 228, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

As specifically defined by the Fifth Circuit with regard to social security cases, "substantial evidence" is:

Such evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a mere suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Haywood,* 888 F.2d at 1466.

"Disability" is defined as an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that is expected to result in death or last for twelve or more months. *Id.* An individual applying for disability bears the initial burden of proving that he or she is disabled. *Id.* Once this original burden is satisfied, the Commissioner bears the burden of "establishing that the claimant is capable of performing substantial gainful activity and, therefore, is not disabled." *Id.* In determining whether or not a claimant is capable of performing substantial gainful activity, the Commissioner utilizes the five-step sequential procedure set out in 20 C.F.R. § 416.920(b)(f). The steps are as follows:

(1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings, age, education and work experience.

(2) An individual who does not have a "severe impairment" will not be found to be disabled.

(3) An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

(4) If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.

---

1. Contrary to the Appeals Council's *Remand Order,* the record indicates that no vocational expert was present at the hearing.

2. It should be noted that the Court has carefully and completely reviewed the entire record as required in such cases. *See Moore v. Sullivan,* 919 F.2d 901, 904 (5th Cir.1990).

(5) If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity will be considered to determine if the individual can perform any other kind of substantial gainful employment according to the Medical–Vocational Guidelines as set forth by the Secretary.

*Id.; Brown v. Apfel,* 192 F.3d 492, 498 (5th Cir.1999) (quoting *Leggett v. Chater,* 67 F.3d 558, 564 n. 2 (5th Cir.1995)); *see also Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir.1990). The claimant bears the burden of proof on the first four parts of the inquiry. *Leggett,* 67 F.3d at 564. The burden then shifts to the Commissioner on the fifth prong. *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir.1994). This shifting of the burden of proof to the Commissioner is neither statutory nor regulatory, but instead, originates from judicial practices. *See Brown,* 192 F.3d at 498 (citing with approval *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir.1987) ("The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act.")).

On an appeal from the Commissioner's decision, the Court is not to reweigh the evidence, try the issues *de novo,* or substitute its judgment for that of the Commissioner. *Id.; Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir.1988); *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987). Further, "[i]f the [Commissioner's] findings are supported by substantial evidence, they are conclusive and must be affirmed." *Brown,* 192 F.3d 492 (quoting *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir.1990)); *see also* 42 U.S.C. § 405(g). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve" *Selders,* 914 F.2d at 617. What we strive for is "[j]udicial review [that is] deferential without being so obsequious as to be meaningless." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir. 1986).

### III. THE ALJ's FINDINGS

In the instant case, the ALJ made the following findings:

(1) The Claimant [Plaintiff] has not engaged in substantial gainful activity since June 12, 1989.

(2) The medical evidence establishes that the Claimant has chronic obstructive pulmonary disease and post-phlebitic syndrome in the lower extremities, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(3) The Claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible.

(4) The Claimant lacks the residual functional capacity to lift and carry more than ten pounds or stand or walk for prolonged periods.

(5) The Claimant has no history of past relevant work.

(6) The Claimant has no significant non-exertional limitations which narrow the range of work he is capable of performing.

(7) The Claimant is 48 years old, a "younger individual age 45–49."

(8) The Claimant has a marginal education.

(9) Based on exertional capacity for sedentary work, and the Claimant's age, educational background, and work experience, Section 416.969 and Rule 201.18, Table 1, Appendix 2, Subpart P, Regulations No. 4 direct a conclusion of "not disabled."

(10) The Claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(TR. at 275).

The Court has completely and carefully reviewed the parties' briefs and the tran-

script and has determined that there is no substantial evidence in the record to support the ALJ's findings.

## IV. ANALYSIS

As previously mentioned, the Court's role is limited to:

(1) Whether the final decision is supported by substantial evidence; and

(2) Whether proper legal standards were used to evaluate the evidence.

42 U.S.C. § 405(g); *Brown v. Apfel,* 192 F.3d 492 (5th Cir.1999) (first alteration in the original) (quoting *McQueen v. Apfel,* 168 F.3d 152, 157 n. 2 (5th Cir.1999)); *see also Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir.1992); *Haywood v. Sullivan,* 888 F.2d 1463, 1466 (5th Cir.1989); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988).

The Plaintiff claims that the ALJ improperly evaluated the Plaintiff's allegation of illiteracy. Specifically, he claims that there is no substantial evidence to support the ALJ's finding of illiteracy. The Court agrees.

Although the Court recognizes the strong presumption in favor of the Defendant in this case, it simply cannot affirm the ALJ's decision when it is clearly not based on substantial evidence.

With respect to the case *sub judice,* "illiteracy" means the inability to read or write. "We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 404.1564(b)(1).

At all three administrative hearings, the Plaintiff maintained that his niece completed the applicable forms for him. At the hearing on September 2, 1997, the Plaintiff testified that he was in special education classes and could not read or write (TR. at 328). The Plaintiff testified on the record that the only message that he could write

was his name (TR. at 329, 411). The Plaintiff has testified that he has never had a job that required him to read or write (TR. at 329). At the May 9, 1996 hearing[3], the Plaintiff offered corroborating testimony of a person who had known the Plaintiff for ten (10) years and had personal knowledge of the Plaintiff's inability to read and write.

The Defendant claims that the ALJ's opinion was supported by substantial evidence. The ALJ, in his opinion, cited to various factors that led to his determination that the Defendant was literate. First, the ALJ cites the fact that he attended high school through the tenth (10th) grade. The ALJ finds it "highly unlikely" that the Plaintiff could proceed to that level of education and be illiterate. In *Albritton v. Sullivan,* 889 F.2d 640 (5th Cir.1989), the Fifth Circuit noted:

> The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your ... impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities.

*Id.* at 643. It is clear that the past level of education that the Plaintiff completed is not dispositive of the issue of the Plaintiff's alleged illiteracy. Reviewing the record, the Plaintiff explained that he made it through that level of school by "playing sports" and "cleaning up things" (TR. at 330). He also testified that he was "very good" at sports. The record also indicates that the Plaintiff failed some grade levels

---

**3.** According to the Plaintiff's brief, this hearing was not fully transcribed because the second audio cassette recording is no longer available. The testimony referred to is, however, partially included in the record for the Court's review (TR. at 405).

(TR. at 335), which supports his testimony that he was pushed through school. Throughout the entire record, there is no evidence that controverts the Plaintiff's testimony on these matters.

The ALJ then states that the Plaintiff's credibility is lacking. However, the reasons for this opinion are suspiciously absent. The ALJ did, however, point to the fact that the Plaintiff had a driver's license, and that he was an auto-mechanic. The ALJ apparently doubted that the Plaintiff could learn to tune cars by looking at the pictures in manuals, despite the fact that the Plaintiff explained that, from time to time, he would have someone read the materials to him if it were necessary (TR. at 332). This case is similar to *Albritton*. In *Albritton*, the plaintiff was a former mechanic who claimed that he was illiterate. The Fifth Circuit reversed the Commissioner's finding and held that the plaintiff was illiterate—despite the fact that he was capable of working on vehicles and had four years of formal education. *See generally Albritton v. Sullivan*, 889 F.2d 640 (5th Cir.1989). The Fifth Circuit then remanded the case to the Commissioner with instructions to reapply the Medical–Vocational Guidelines, taking into account Albritton's illiteracy. *Id.* at 643.

In this case, the ALJ also relied heavily on the fact that the Plaintiff apparently filled out part of the "vocational report" in this case. In the order denying benefits to the Plaintiff, the ALJ quantifies his amount of reliance on this fact by starting his analysis with the phrase "most importantly." However, the Defendant, in his brief, is quick to concede that the fact the vocational forms appear to be written in more than one type of handwriting lends credence to the Plaintiff's testimony that someone had to help him. This, in turn, lends credence to the Plaintiff's testimony that he was illiterate. The Court finds it very telling that the "most important" factor to the ALJ actually supported the Plaintiff's uncontradicted testimony that he was illiterate.

At the hearing to evaluate the Plaintiff's claims of illiteracy, the ALJ asked over thirty (30) questions of the Plaintiff concerning his ability to read. Each and every answer the Plaintiff gave was consistent with his testimony that he could not read and write. There was virtually no evidence presented at any hearing that was inconsistent with the Plaintiff's allegations of illiteracy. Nevertheless, the ALJ found that the Plaintiff possessed a "marginal education." This situation is analogous to the age old question concerning the tree falling in the woods with no one to hear it—if you conduct a hearing where you completely disregard the answers to virtually every question you ask, did an inquiry really take place?

The record illustrates that whatever schooling the Plaintiff may have received was no longer meaningful and did not represent his educational abilities in the face of uncontradicted evidence that he was functionally illiterate. *See Dollar v. Bowen*, 821 F.2d 530 (10th Cir.1987) (The claimant was found illiterate despite completing eight years of education. The claimant's education could not be classified as "limited or less" when uncontradicted evidence existed that the claimant could not read or write.), *cited in Albritton*, 889 F.2d at 643. The Plaintiff's testimony that he is illiterate remains uncontradicted after three administrative hearings. The Court finds that the record lacks substantial evidence to support a finding of literacy. As such, the ALJ's findings must be reversed.

## V. CONCLUSION

In light of the Court's extensive review of the record in this case, the Court finds that there is not substantial evidence to support the ALJ's decision that the Plaintiff has a marginal education. Since 1992, the Plaintiff has claimed that he was illiterate. The Plaintiff has repeatedly been denied benefits on the grounds that he is "not disabled." This case has been remanded twice before the present appeal. The record, which consists of over 400

pages, affirmatively establishes that the Plaintiff is illiterate. The Court finds it unconscionable to remand this eight-year-old case to the ALJ for further review. Accordingly, we hereby remand this case with instructions to the Commissioner, and order him to award Jimmerson the benefits that he would have otherwise been entitled to but for the determination by the ALJ that he possessed a marginal education. *See Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir.1992).

It is therefore

**ORDERED** that the ALJ's November 21, 1997 finding that Jimmerson possesses a marginal education is hereby **REVERSED.** It is further

**ORDERED** that this case is **REMANDED** to the Commissioner. It is further

**ORDERED** that the Commissioner **SHALL AWARD** Jimmerson the benefits that he would have otherwise been entitled to, but for the November 21, 1997 determination by the ALJ that Jimmerson possessed a marginal education. It is further

**ORDERED** that any other relief not herein expressly granted is hereby **DENIED.** It is further

**ORDERED** that this case is **CLOSED.**